Matter of the WORKER'S COMPEN-
SATION CLAIM OF Judy KECK, an
Employee of RJB Properties, Inc.:

Judy Keck, Appellant
(Employee/Claimant),

v.

State of Wyoming, ex rel., Wyoming Work-
ers' Safety and Compensation Division,
Appellee (Objector/Defendant).

No. 97–359.

Supreme Court of Wyoming.

June 24, 1999.

Representing Appellant: George Santini of Ross, Ross & Santini, Cheyenne, WY. Argument by Mr. Santini.

Representing Appellee: William U. Hill, Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Robert L. Lanter, Senior Assistant Attorney General. Argument by Mr. Lanter.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

Appellant Judy Keck, a food server, injured her knee at work when she twisted her body while carrying glasses. The Worker's Compensation Medical Commission (Commission) denied Keck's request for benefits, stating that Keck's injury was not compensable because twisting is an activity of day-to-day living. Keck appealed, and the matter was certified to this court. Because the Commission incorrectly applied the day-to-day living exclusion, we reverse.

### ISSUES

Keck stated the issues for review:

1. Did the Medical Commission err in denying Appellant's claim for worker's compensation benefits in the absence of objective medical evidence that her injury resulted primarily from the natural aging process or the normal activities of day to day living?

2. Does § 27–14–102(a)(xi)(G), W.S.1977 (1996 Repl.), violate Article 10, § 4 of the Wyoming Constitution by exclusion of injuries arising from the normal activities of day to day living from the definition of "injury" for purposes of compensability under the Wyoming Worker's Compensation Act?

The Division rephrases the issues:

1. [Were] the Medical Commission's decisions supported by substantial evidence and in accordance with the law?

2. Is the exclusion of injuries resulting primarily from the normal activities of day-to-day living from the Wyoming Worker's Compensation Act's definition of "injury" constitutional?

### FACTS

Keck, a food server, injured her knee at work on August 6, 1996, when she twisted her body while carrying glasses. The pain was not immediately apparent, and she finished working her shift. That afternoon, after the knee became painful and swollen, Keck reported the injury to her supervisor and project manager and filed an incident report.

Approximately one week after her injury, Keck sought medical treatment. Upon examination, her doctor discovered Keck's knee had a "possible loose body anteriorly" with a potential meniscal tear, and referred her to an orthopedic surgeon. On September 3, 1996, the orthopedic surgeon examined Keck's knee and diagnosed inflammatory arthritis. On September 23, 1996, after examining Keck again, the orthopedic surgeon asserted Keck had suffered an aggravation of her underlying pathology.

Keck submitted her medical bills to the Worker's Compensation Division (Division) for payment. On October 10, 1996, the Division issued a Final Determination letter declaring that Keck's injury was covered and, if compensable, the medical or disability benefit claims would be paid. After further review, the Division denied Keck's claims, reasoning her inflammatory arthritis treatments were not related to her work injury. Keck filed an objection and requested a hearing.

At the Division's request, on October 28, 1996, a second orthopedic surgeon examined Keck as part of an independent medical evaluation (IME) and stated, "I believe the patient has an aggravation of underlying osteoarthritis versus inflammatory arthritis of her right knee.... [S]he has significant underlying disease and ... her problems were only aggravated by her original injury and not a result of the injury [on August 6,

---

* Chief Justice at time of oral argument; retired November 2, 1998.

1996]." An MRI, done on November 12, 1996, indicated the lateral meniscus was in an abnormal position and evidenced degenerative changes in the periphery of the bone.

The Division referred the matter to the Worker's Compensation Medical Commission. The Commission conducted a hearing on June 12, 1997, ultimately denying Keck's claim. It reasoned that although her injury aggravated a preexisting condition, the injury was not compensable because twisting is an activity of day-to-day living and, thus, coverage was precluded by Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) (Michie Cum.Supp. 1996). Keck sought review in the district court, which certified the case to this court pursuant to W.R.A.P. 12.09(b).

### STANDARD OF REVIEW

Wyoming Rule of Appellate Procedure 12.09(a) limits judicial review of agency action to matters specified in Wyo. Stat. Ann. § 16–3–114(c) (Michie 1997). *Matter of Everheart*, 957 P.2d 847, 851 (Wyo.1998). Section –114(c) states, in relevant part:

The reviewing court shall:

. . .

(ii) hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]

When reviewing an administrative decision, we will not defer to an agency's conclusions of law, but will defer to the agency's findings of fact supported by the evidence. *Nelson v. Sheridan Manor*, 939 P.2d 252, 255 (Wyo.1997). When the party charged with the burden of proof has failed to meet that burden, we review the case under the arbitrary, capricious, abuse-of-discretion, or otherwise-not-in-accordance-with-law standard. *Pederson v. State, ex rel. Worker's Compensation Div.*, 939 P.2d 740, 742 (Wyo.1997); *City of Casper v. Utech*, 895 P.2d 449, 452 (Wyo.1995); *Stuckey v. State, ex rel. Workers' Compensation Div.*, 890 P.2d 1097, 1099 (Wyo.1995).

### DISCUSSION

A preexisting injury is not a compensable injury; however, aggravation of such condition by a subsequent work injury may be compensable. Wyo. Stat. Ann. § 27–14–102(a)(xi)(G); *Bright v. Sheehan Pipeline*, 960 P.2d 1009, 1010 (Wyo.1998); *State, ex rel. Workers' Compensation Div. v. Fisher*, 914 P.2d 1224, 1227 (Wyo.1996). To receive coverage, the work injury must have aggravated, accelerated, or combined with the preexisting condition to produce the present injury. *State, ex rel. Workers' Compensation Div. v. Roggenbuck*, 938 P.2d 851, 853 (Wyo.1997). There is no dispute that Keck has a preexisting condition and that her work injury contributed materially to the aggravation or acceleration of her preexisting problem. Therefore, the only question is whether Keck's injury is excluded from coverage by Wyo. Stat. Ann. § 27–14–102(a)(xi)(G).

In 1994, the legislature amended § 27–14–102(a)(xi) to exclude normal activities of daily living from the definition of injury and from coverage:

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires the employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:

. . .

(G) Any injury resulting primarily from the natural aging process or from the normal activities of day-to-day living, as established by medical evidence supported by objective findings[.]

We recently discussed the day-to-day living exclusion in *State, ex rel. Workers' Safety & Compensation Div. v. Sparks*, 973 P.2d 507 (Wyo.1999) and *Sellers v. State, ex rel. Workers' Compensation Div.*, 979 P.2d 959 (Wyo.1999). In those cases we said that

the right-of-control test is the proper standard to use in determining if the activity in question is an activity of day-to-day living. Thus, "when an employee is engaged in activities over which the employer is vested with the right of control, these cannot be normal activities of day-to-day living because the employer has no such right with respect to the normal activities of day-to-day living." *Sparks*, 973 P.2d at 511.

■ We also have discussed the allocation of the burden of proof in this type of case. First, the claimant must prove all the essential elements of the claim. *Martinez v. State, ex rel. Workers' Compensation Div.*, 917 P.2d 619, 621 (Wyo.1996). Thereafter, the burden shifts, requiring the party opposing compensability of the injury to produce medical evidence, supported by objective findings, demonstrating that the claimant's injury resulted primarily from the normal activities of daily living as well as right-of-control evidence showing the employer had no control over the claimant's activity. *Sparks*, 973 P.2d at 510–11; *Cabral v. Caspar Building Systems, Inc.*, 920 P.2d 268, 270 (Wyo.1996).

Keck twisted and injured her knee while moving glasses, a job-related activity. Although the Division presented evidence that twisting is an activity of daily living, it failed to meet its burden of offering any right-of-control evidence establishing Keck injured her knee while engaged in an activity beyond her employer's control. The Commission acknowledged that Keck's work injury aggravated an underlying condition. It erred, however, in applying the day-to-day living exclusion, Wyo. Stat. Ann. § 27–14–102(a)(xi)(G), and by deciding Keck's injury was not compensable. We are, therefore, compelled to reverse the Commission's decision because it is not in accordance with law. *Stuckey*, 890 P.2d at 1099.

### Constitutionality of Wyo. Stat. Ann. § 27–14–102(a)(xi)(G)

■ Keck failed to challenge the constitutionality of Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) before the Commission and raised it for the first time on appeal. We requested supplemental briefing from the parties to aid in our determination of whether that issue was properly before this court. Upon further review, it is clear this court should not hear Keck's challenge. In a recent Order of Dismissal published by this court, we stated W.R.A.P. 12.12 outlines the appropriate method to raise a constitutional challenge before an administrative agency. *Riedel v. Anderson*, 972 P.2d 586, 587 (Wyo. 1999). Because Keck's constitutional claim was not properly raised, we will not address it.

### CONCLUSION

Keck twisted and injured her knee while working, which aggravated a preexisting condition. The Division failed to produce evidence that this activity was one of day-to-day living, in accordance with the right-of-control test. The Commission, thus, erred in applying the exclusionary clause; and its decision was not in accordance with law.

Reversed.